IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Samantha Price | ) | Case No. 12-6799 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BP, P.L.C, a British public limited Company | ) | |
| BP Corporation North America Inc., a Texas | ) | |
| Corporation) (collectively hereafter "BP") | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**CLASS ACTION COMPLAINT**

**I.    INTRODUCTION**

1.     This is an action to recover damages on behalf of BP consumers arising from BP's sale of contaminated and defective fuel across four states, originating from BP's refining of fuel in Indiana, that caused damage to automobile fuel consumers in at least, Illinois, Indiana, Michigan and Wisconsin.

**II.    PARTIES**

2.     **The Named Plaintiff.** The Plaintiff, Samantha Price, is a citizen of Illinois, and resides in Chicago, Illinois.

3.     **Defendant BP p.l.c.** Defendant, BP p.l.c., is a corporation organized under the laws of England and Wales with its principle place of business in London, England.  BP p.l.c.'s activities are widespread in the United States.  BP p.l.c. does business in various states, and has incorporated its subsidiaries including BP Corporation North America, Inc., registered in multiple states including Indian and Illinois, with its principal place of business in Houston, Texas.  BP p.l.c. exercises control over the BP subsidiaries.

1

4. **Defendant BP Corporation North America Inc.**[1] Defendant, BP Corporation North America Inc., is registered in Indiana and Illinois, and has its principal place of business in Houston, Texas.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to diversity jurisdiction. 28 U.S.C. § 1332.

6. Upon information and belief, the repair of thousands of vehicles will exceed the sum or value of $75,000 (the reports for repair costs are estimated at between $300 and about $1,000 per vehicle with thousands of vehicles potentially damaged).

7. The parties are diverse for purposes of jurisdiction; BP has its principal place of business in Texas, and Plaintiff is an Illinois citizen.

8. For purposes of Venue, Defendant, during the relevant period resided in, and/or transacted business in, the Northern District of Illinois, Eastern Division.

9. Venue is proper in this district because Defendant can be found in, resides in and /or transacts business in the Northern District of Illinois and because some of the violations described herein occurred within this judicial district.

### IV. ALLEGATIONS

#### A. Plaintiff's Experience.

10. Plaintiff, who works as a respiratory therapist, on Thursday, August 16, 2012, purchased fuel at a BP retail outlet located in Hammond, Indiana, at the corner of 165th Street and Calumet.

11. She purchased her fuel between 1 p.m. and 2 p.m.

12. Plaintiff paid cash, and did not obtain a receipt.

---

[1] BP America Inc., is an active corporation in Illinois and Delaware.

13. Plaintiff frequently purchases fuel at this location.

14. Plaintiff's car, a Volkswagen Jetta, was, prior to the incident described in this complaint, in generally fine working condition, with less than 20,000 miles.

15. The following morning, August 17, 2012, Plaintiff's car would not start.

16. Plaintiff's car was "jumped" by a mechanic, and she drove it to her dealership. At the time, it produced an unusual bad smell, and ran badly. The dealership provided some repair, after running a computer diagnostic and download, and her car received its 20,000 mile inspection.

17. On the morning of Saturday August 18, 2012, Plaintiff's car again would not start. Plaintiff's car was towed to her dealership. At this time, news of the BP fuel problem was widely known. The dealership tested the car for "bad" fuel. The work form, attached, states that bad contaminated fuel was identified:

> CUSTOMER STATES CAR WILL NOT START. TOWED IN ROADSIDE
> HAS FUEL FROM BP GAS STATATION
> SCANNED FOR CODE AND FOUND SEVERAL MISFIRE CODES. FOUND FUEL CONTAMINATED /BAD FUEL
> DRAINED FUEL AND CLEANED FUEL SYSTEM. CLEARED FAULTS AND RESTARTED NORMAL.

Attached as, Exhibit 1.

18. The dealership removed the fuel, put in new fuel and replaced a filter. Plaintiff's damages were, without towing, $344.

19. Plaintiff called BP regarding the problem, waited on the phone for over 1 hour, to provide her name and phone number, but has not received any further information or a call back.

### B. BP's Statement

20. On or about August 22, 2012, BP issued the following statement on its Web page that admits material facts regarding jurisdictional, merit and class certification issues:

> BP is reaching out to consumers who may have been affected by a fuel quality issue in the Chicagoland, Milwaukee and Northwest Indiana areas. Consumers who are experiencing engine problems and believe they received off spec fuel from a BP site should contact our customer service hotline at (800) 333-3991.
>
> We are receiving a high volume of calls and have significantly increased our call center staffing to handle these important calls. In the meantime, you can submit a claim via this website, using the "contact us" form on the tab above. We will call you with further instructions in the next 24-48 hours.
>
> We realize that many of our customers have been inconvenienced and we want to assure you we will make things right. We are adding staff to improve our response time to your calls and will be in touch shortly.
>
> What happened?
>
> BP has determined that a batch of fuel shipped from our Whiting, Indiana fuel storage terminal contained a higher than normal level of polymeric residue.
> This residue may cause hard starting and other drivability issues.
>
> What areas are affected?
>
> Unleaded regular and mid grade gas distributed to Northwest Indiana and Southeast Chicago from Aug. 13 to Aug. 20 may have been affected.
> A small quantity of premium fuel in the Milwaukee area sold between 10 p.m. Monday evening (Aug. 20) and 6:45 am Tuesday morning was also affected.
>
> Actions BP is taking
>
> We are identifying any retailers in Northwest Indiana, Southeast Chicago, or Milwaukee who may have received the off-specification fuel. We have asked them to suspend all sales of this product.
>
> We are now actively recovering gas from those affected service stations.
> In addition, we are confident that the fuel being distributed now from the fuel storage terminal in Whiting is suitable for use.

> We understand how important our consumers' vehicles are, and we stand by our commitment to our products.
>
> Therefore, we are establishing a claims process to reimburse our consumers for the cost of fuel, as well as for any repairs that may legitimately be associated with the off-specification product.
>
> As a part of our fuel guarantee, we always operate a toll-free number. For the past 24 hours, we have been using that toll-free number to take contact information for anyone who may have been affected.
>
> We did receive a high volume of calls and some consumers may have experienced problems getting through. We have added staff to our call center to expedite handling of these calls.
>
> Beginning tomorrow, August 22, we will start to contact consumers and begin processing all legitimate repair claims related to the fuel.
>
> BP's guarantee
>
> BP guarantees every gallon of gasoline that we sell, and we will work with each of our consumers and customers to remedy this situation.

Attached as, Exhibit 2.

21. Upon information and belief it was reported by the Chicago Tribune that a **"**50,000-barrel batch of contaminated fuel from a BP refinery in Northwest Indiana has fouled countless cars in as many as four states since last week." Exhibit 3.

22. More specifically, "[r]oughly 2.1 million gallons of gasoline have been recalled by BP's Whiting refinery after hundreds of reports of hard-starting and stalling vehicles from motorists flooded Northwest Indiana repair shops the past few days." Id.

23. The "polymeric residue" is reported to have a "sludge-like consistency and clogs the fuel system." Id.

24. Additionally, it has been reported that dealerships and service shops throughout the area have been repairing vehicles with costs in the range of "$300 to $1,200" according to AAA, as reported by the Chicago Tribune. Id.

25.    Scott Dean, a Chicago-based BP spokesman, was quoted that complaints have been received from Illinois, Michigan and Milwaukee, Wisconsin. Of the approximately 4,500 calls and 800 emails received by BP as of Tuesday afternoon, Dean said about 95 percent of the gas-related complaints were from Lake County, IN. Id.

**V.    COUNTS**

**COUNT I**

**Breach of Implied Warranty of Merchantability – Ind. Code § 26-1-2-314[2]**

24.    Plaintiff realleges paragraphs 1-25 as if fully set forth herein.

25.    At all relevant times, there was in full force and effect in Indiana the Indiana Uniform Commercial Code (UCC).

26.    § 26-1-2-314 of the Indiana UCC provides in relevant part:

> (1) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
>
> (2) Goods to be merchantable must at least be such as:
>
> (b) in the case of fungible goods, are of fair, average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used . . . .

27.    By manufacturing and selling gasoline that would cause damage to consumer automobile engines, BP's product was below fair and average quality within its description.

28.    By manufacturing and selling gasoline that would cause damage to consumer automobiles, BP's product was not fit for the ordinary purpose for which its gasoline is used.

29.    The defects in the gasoline are discoverable only by using the gasoline, resulting in harm to consumer automobile engines.

---

[2] Plaintiff may assert sub-classes differentiated by State corresponding to Illinois, Michigan, and Wisconsin for each of the following counts pled, if applicable and later determined to be necessary.

30. BP's misrepresentations violated the Indiana UCC.

31. BP is liable to Plaintiff and other Class Members for all direct and consequential damages resulting from this breach, including the purchase price of the gasoline, and the damage the gasoline caused to their automobiles.

## COUNT II

### Strict Product Liability – Ind. Code § 34-20-2-1, *et seq*.

32. Plaintiff realleges paragraphs 1-31 as if fully set forth herein.

33. At all relevant times, there was in full force and effect in Indiana the Indiana Products Liability Act, Ind. Code § 34-20-2-1, *et seq*.

34. § 34-20-2-1 of the Products Liability Act provides:

> [A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

35. Plaintiff and Class Members are in the class of persons that BP should have reasonably foreseen as being subject to the harm caused by the defective gasoline.

36. BP designed, produced, prepared for sale, and sold the gasoline to consumers in a defective condition unreasonably dangerous to the purchasers and consumers of the product, and to their property. BP both placed the gasoline into the stream of commerce and, in some cases,

7

sold it directly to consumers. The gasoline was expected to, and in fact did, reach the Plaintiff and Class Members without substantial alteration to its condition.

37. Plaintiff and Class Members and their property were in fact harmed by their use of the defective gasoline.

38. BP is liable to Plaintiff and other Class Members for all direct and consequential damages resulting from this violation of the Indiana Product Liability Act, including the purchase price of the gasoline, and the damage the gasoline caused to their automobile engines.

## COUNT III

### Negligence

39. Plaintiff realleges paragraphs 1-38 as if set forth fully herein.

40. At all relevant times, it was BP's duty to exercise due care in the design, testing, manufacturing and selling of gasoline such that it would be reasonably safe for its intended use.

41. BP knew or had reason to know that Plaintiff and Class Members, as members of the general public, would be likely to use gasoline to fuel their automobiles.

42. BP knew or reasonably should have known of the danger associated with the Plaintiff and Class Members' use of the defective gasoline.

43. As a direct and proximate result of the foregoing acts or omissions, Plaintiff and Class Members purchased defective gasoline that caused damage to their automobile engines.

44. BP is liable to Plaintiff and other Class Members for all direct and consequential damages resulting from this breach, including the purchase price of the gasoline, and the damage the gasoline caused to their automobile engines.

## COUNT IV

### Indiana Consumer Fraud Act, Ind. Code § 24-5-0.5-1, *et seq.*

45. Plaintiff realleges paragraphs 1-44 as if set forth fully herein.

46. At all relevant times, there was in full force and effect in Indiana the Indiana Consumer Fraud Act, Ind. Code § 24-5-0.5-1, *et seq*.

47. Ind. Code § 24-5-0.5-3 of the Indiana Consumer Fraud Act reads in pertinent part:

> (a) The following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:
>
> (1) That such subject of a consumer transaction has sponsorship, approval, performance, **characteristics**, accessories, **uses**, or benefits it does not have which the supplier knows or should reasonably know it does not have.
>
> (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

48. During the relevant time, BP made representations to the general public, including Plaintiff and Class Members, about its gasoline. Specifically, BP represented that its gasoline had characteristics and uses that made it safe to use in automobiles. BP made these representations when it either knew or should have known that its gasoline was not safe for use in automobiles.

49. During the relevant time, BP made representations to the general public about its gasoline's quality and various grades. BP made these representations when it either knew or should have known that its gasoline was not of the quality and grade it described.

50. BP's misrepresentations violated the Indiana Consumer Fraud Act.

9

51. BP is liable to Plaintiff and other Class Members for all statutory, direct and consequential damages, and fees and costs, resulting from this breach, including the purchase price of the gasoline, and the damage the gasoline caused to their automobiles.

## COUNT V

### Punitive Damages

52. Plaintiff realleges paragraphs 1-51 as if set forth fully herein.

53. Prior to and during the first week following BP's shipment of the defective gasoline, BP was aware or should have been aware that serious harm would result from consumers' use of the defective gasoline. The defective gasoline posed a significant risk to consumers' automobile engines and BP knew that a large number of consumers would be harmed by their use of the product.

54. Prior to and during the first week following BP's shipment of the defective gasoline, BP was aware or should have been aware that its gasoline was neither safe nor suitable for the purposes for which it was marketed and sold to the Plaintiff and Class Members. Despite this knowledge, BP continued to market its gasoline to the general public for use in automobiles.

55. The conduct of BP as set forth above constitutes gross negligence and recklessness, and warrants the imposition of punitive damages against BP.

**VI.    CLASS CERTIFICATION UNDER FED. R. CIV. P. RULE 23**

56. This case satisfies all of the Fed. R. Civ. P. 23(a) prerequisites and is maintainable under 23(b)(2) for a declaratory judgment, and (b)(3) for separate monetary recoveries.

    **A.    Class Definition**

57. Rule 23(c)(B) requires a class definition. Here, the class is defined as:

all consumers of BP Premium, Mid and Low Grade gasoline from the Whiting Indiana refinery from approximately August 13 to August 20, 2012, purchased in Michigan, Indiana, Illinois, and Wisconsin.

### B. Rule 23(a)'s four preliminary prerequirements.

58. The Court considers numerosity, commonality, typicality, and adequacy: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the other class members, and (4) the class representatives are able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a).

59. After considering and satisfying Rule 23(a)'s prerequisites the Court must determine if the claim comes within one or more of Rule 23(b)'s three subsections.

60. Plaintiff here seeks a 23(b)(2) class which authorizes a class action to proceed where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, and/or as a 23(b)(3) category (identical monetary claims in differing amounts), where class treatment is superior, no individual issues exist that would predominate over class issues, and the claims are best managed by a class action.

### C. Rule 23(a)'s Prerequisites Are Satisfied.

61. Numerosity Is Satisfied. Under Rule 23(a)(1), a class is so numerous that joinder is impracticable. The proposed class includes thousands of purchasers of Premium, Mid and Low grade fuel, many of which are readily identifiable via BP gasoline station computer records. The class is so numerous that joinder of all class members would be impracticable.

62. Commonality Is Met. Under Rule 23(a)(2) there must be questions of law or fact that are common to the class. A common nucleus of fact or law is present here where BP engaged in

11

standardized conduct towards members of the proposed class by manufacturing and selling gasoline.

63.     BP's conduct is <u>standardized conduct</u> toward the class by selling similarly refined gasoline.

64.     The Named Plaintiff's Claims are Typical of the Class.  Under the typicality requirement, Plaintiff must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).

65.     Typicality is met here because the relief which Plaintiff seeks arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and their claims are based on the same legal theory.

66.     Plaintiff has typical claims because, to pursue her own self-interest in the litigation, she will advance the interests of the Class Members, which are aligned with Plaintiff's interests.

67.     Here the named representative's claims have the same essential characteristics as the claims of the class at large.

68.     The Plaintiff has been injured by the same course of BP sale of refined fuel. The Plaintiff's claims are identical to the rest of the class, and seek the same type of relief—a declaration regarding the contamination and defectiveness of the common refined fuel sale.

69.     Adequacy of Representation Is Also Met. Rule 23(a)(4)'s adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent.  The adequacy test has two parts: first ascertaining that the interests of the representative party will not conflict with the interests of any of the class members; second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation.

70. Adequacy is fully satisfied in this case. Plaintiff has suffered damages to her automobile, and the repair costs the named Plaintiff seeks for relief are consistent with, and not antagonistic to, the interests of the other Class Members.

71. The class representative has protected the Class Members' interests because she, like the putative Class Members, seeks declaratory relief that is to their common benefit.

72. Plaintiff's counsel is also qualified to represent the class adequately. For their part, they are experienced class action and litigation attorneys. Plaintiff's counsel is well experienced in class litigation involving a variety of issues.

73. Additionally, the large breadth and scope of actual damages requires Plaintiff to bring suit regardless of Defendant's recall, to ensure oversight not provided by self-regulation to maintain customer good-will. Judicial oversight, class counsel independent oversight, and mandatory resolution of claims promotes compliance rather than mere self-policing.

    **D. Rule 23(b)(2) – Declaratory Judgment Class.**

74. The case fits into the Rule 23(b)(2) category.

75. Certification under 23(b)(2) is proper because Plaintiff is demanding for declaratory relief that the sale of fuel from the Whiting, Indiana refinery constituted a violation of Indiana statutes and other laws.

    **E. Rule 23(b)(3) – Predominance, Manageability and Superiority.**

76. The Rule 23(b)(3) category for identical monetary claims in differing amounts is also met. Here, class treatment is superior, no individual issues exist that would predominate over class issues, and the claims are best managed by a class action.

77. Plaintiff demands a jury trial for all issues.

  WHEREFORE, Plaintiff prays that:

  a. A class be certified, the named Plaintiff be declared the class representative, and counsel be appointed lead-counsel;

  b. Plaintiff and the Class Members be awarded judgment against Defendant in such an amount as the evidence may show including but not limited to actual damages;

  c. Class counsel be awarded attorney's fees as provided by law;

  d. Class counsel be awarded costs and expenses in filing this suit;

  e. Plaintiff and the Class Members be awarded any and all such further relief as this Honorable Court may deem equitable and just; and

  f. Plaintiff be awarded an incentive award in an amount deemed equitable and just.

         s/Kenneth T. Goldstein

Clinton A. Krislov
Kenneth T. Goldstein
KRISLOV & ASSOCIATES, LTD.
20 N. Wacker Drive, Suite 1350
Chicago, Illinois 60606
312-606-0500